IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHLEEN L. FORTSON,                                                   CV. 07-311-AS

                  Plaintiff,                                     FINDINGS AND
                                                                                RECOMMENDATION

      v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                  Defendant.
_____

ASHMANSKAS, Magistrate Judge:

       Claimant Cathleen L. Fortson seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. See 42 U.S.C. §§ 401-33, 1381-83f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, I conclude that the decision of the Commissioner is supported by substantial evidence, contains no errors of law, and should be affirmed.

FINDINGS AND RECOMMENDATION       1

## ADMINISTRATIVE HISTORY

Claimant filed applications for SSI and DIB on May 5, 2003, alleging an inability to work beginning March 24, 2003. The application was denied initially and on reconsideration. Claimant requested a hearing, which was held before an Administrative Law Judge ("ALJ") on March 21, 2006. Claimant, who was represented by counsel, appeared and testified. A vocational expert ("VE") and a medical expert ("ME") also testified at the hearing. On April 12, 2006, the ALJ issued a decision denying the application. This decision became final on January 30, 2007, when the Appeals Council denied review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at 1039-1040.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated claimant's disability, as required. See 20 C.F.R. § 416.920. First, the ALJ concluded that

claimant had not engaged in any substantial gainful activity since the onset of her alleged disability. Tr. 18. This is not disputed. Second, the ALJ concluded that claimant suffers from two severe impairments, coronary artery disease and peripheral vascular disease. Id. See 20 C.F.R. §§ 404.1520(c), 404.920(c). Again, this is not disputed. Third, the ALJ conclu\ded that claimant's impairments do not meet or equal the criteria in the Listing of Impairments, Appendix 1, Subpart P, Regulations Part 404. Tr. 19. At step three, claimant is not disabled.

Next, at Step 4, the ALJ determined that claimant has the residual functional capacity ("RFC") to perform "sedentary exertion work." Id. A claimant with an RFC for "sedentary exertion work" is capable of performing work that involves sitting, occasionally walking or standing, and occasionally lifting and carrying ten pounds. This RFC allows for six hours of sitting and two hours of standing and/or walking each workday. Id.

The ALJ examined claimant's specific complaints. Regarding claimant's heart disease, the ALJ observed that claimant did not receive regular treatment. When she did receive treatment, claimant typically responded well and "[had] been essentially stable on [her] medication regimen" since December 2004. Tr. 20. A stress test "revealed normal findings, including heart rate and blood pressure response." Also, on February 1, 2006, claimant's echocardiogram produced normal results. For these reasons, the ALJ found claimant's testimony as to the "intensity, duration and limiting effects" of her impairment not credible. Id.

Claimant also complained that vascular problems in her legs created further physical limitations. The ALJ cited a letter from Dr. Erik Swensson, a vascular surgeon, who examined claimant and "concluded [that] the symptomatology of [claimant's] legs 'really is not consistent with any type of vascular problem.'" Id. (citing Tr. 240.) Dr. Swensson also recommended that

"claimant walk and exercise as much as possible." Id. Again, the ALJ reasoned that claimant's testimony about the extent of her leg impairment was not credible.

Next, the ALJ considered the credibility of the assessment of claimant's treating physician, Dr. Eugene Spear. In this report, titled "Medical Source Statement," Dr. Spear "was asked to identify [claimant's] specific work-related limitations." Id. The ALJ concluded that his assessment was inconsistent with the record as a whole and his earlier treatment notes in particular. The ALJ accepted Dr. Spear's progress notes as credible, while rejecting his conclusions from the overall assessment. Tr. 22.

The ALJ also evaluated the credibility of lay witness testimony. First, the ALJ found that the description of claimant's daily activities given by Roosevelt Watkins, claimant's fiance, reflected a "reasonably normal" lifestyle. Tr. 22. Also, the ALJ found no support in the record for his comments regarding claimant's postural limitations or inability to complete tasks. For these reasons, the ALJ found the testimony of claimant's fiancé lacked credibility. Second, the ALJ was skeptical of statements made by claimant's sister, Debra Abrames, regarding memory and concentration problems, because they were not reflected in the record. The ALJ also held that claimant's post-breakup depression had resolved and had not lasted longer than twelve months. In addition, the ALJ observed that Ms. Abrames statements about claimant's leg pain were unsubstantiated, nor was there objective evidence of claimant's arm pain, fatigue or difficulty breathing in the record. Thus, no credit was given for these alleged ailments. Finally, the ALJ evaluated the statements of claimant's other sister, Barbara Kidd. Ms. Kidd testified that claimant was weak, tired, and in pain all the time, and that she gave all of her energy to her child. However, the ALJ found her description of claimant at odds with the record and thus gave it

little weight. Overall, the ALJ gave the lay witness testimony little weight because it was often inconsistent with the objective record. And, where the testimony was consistent, the ALJ again gave it little weight because the information amounted to mere observations of lay people, not experts. Tr. 23.

Finally, at Step 5, the ALJ determined that, based on claimant's RFC, she could not perform past relevant work. According to the VE, claimant is capable of such representative occupations as parking lot cashier, sports goods assembler, and microfilmer. Tr. 23-24. These jobs exist in significant numbers in the national economy. Therefore, the ALJ concluded that claimant is not disabled. Tr. 25.

## STATEMENT OF FACTS

Claimant applied for DIB and SSI benefits on May 5, 2003. Tr. 71. Claimant's disability began after she suffered a massive heart attack on March 24, 2003. Upon discharge from the hospital, claimant's heart disease was diagnosed as ST-Segment Elevation Myocardial Infarction ("STEMI"). Tr. 176. On August 20, 2003, claimant complained to Dr. Spear of "worsening chest pain." Tr. 195. Dr. Spear observed worsening angina and scheduled claimant for a heart catheterization. Tr. 196. On September 2, 2003, Dr. Bradley Titus performed stenting and angioplasty on claimant; both were successful. Tr. 206. Claimant spent the night of December 1, 2003, in the hospital due to persistent chest pains and was again catheterized. Tr. 217.

The record demonstrates that between January and September 2004 claimant saw Dr. Spear five times. Dr. Spear's comments, in general, reflect that claimant was "doing fine" or "okay," experiencing some fatigue and minor blood pressure issues, and required frequent medication management. Tr. 258-262. On December 21, 2004, Dr. Spear wrote that "[a]t the

moment, the patient seems to be doing okay from a heart standpoint. She still has a lot of little aches and pains." Tr. 257. He remarked that he did not think she was "statistically different" and considered lowering her cholesterol medications. Id.

Dr. Erik Swensson, a vascular surgeon, examined claimant to on January 21, 2004. Regarding her complaints of leg pain, he reported that the "symptomatology of [claimant's] legs really is not consistent with any type of vascular problems. . . . [F]rom a vascular standpoint, she should have plenty of blood flow in [her] legs to exercise, almost without limit." Id. Dr. Swensson recommended claimant "walk and exercise as much as possible." Id. Shortly thereafter, on January 25, 2005, claimant again underwent cardiac catheterization. Tr. 274.

On February 14, 2005, Dr. Spear filled out a Medical Source Statement. He concluded that claimant could sit for one hour before shifting or standing up, for a total of four hours per day. He also concluded that claimant could walk a maximum of thirty minutes continuously before alternating into a sitting position, for a total of two hours per day. Tr. 252. Dr. Spear found that claimant required two hours of rest per day, in addition to regularly scheduled breaks, and was capable of occasionally (less than a third of the workday) lifting up to ten pounds. Tr. 253. Dr. Spear reported that claimant's mental capabilities were "fair," requiring a somewhat sheltered work environment, and that claimant's ability to maintain attention for extended periods was also "fair." Tr. 254. He concluded that claimant would miss approximately four days of work in an average month. Tr. 256.

Following this assessment, Dr. Spear continued to see claimant. Between February 17, 2005, and November 28, 2005, Dr. Spear reported the following: claimant had "coronary artery disease with stable angina"; claimant was "doing fine"; claimant had blood pressure that was

slightly elevated; claimant's angina was "more related to stress and anxiety"; claimant needed to cut down on smoking or was cutting down on smoking; claimant was undergoing "aggressive cholesterol treatment." Tr. 287-291.

On February 21, 2006, Dr. Spear wrote a letter to Disability Services regarding claimant's occupational capabilities. He described claimant's condition in that she fatigues easily, performed poorly on a stress test, and exhibited "marked shortness of breath with the smallest amount of activities." Tr. 300. However, Dr. Spear also noted that claimant is "on several medications that can treat all of her medical issues." Id. Dr. Spear wrote an additional letter, on April 3, 2006, in an effort to clarify his earlier letter. He wrote: "[W]hen I summarize by saying that I don't think she is capable of performing a regular work program I have great hesitations for this. She has chronic angina, which is medically stabilized at the moment. We have been treating her aggressively now for over three years, and I think we are at a fairly stable state; however, by no means do I think that she is capable of performing any type of regular work activities." Tr. 321.

At the administrative hearing Dr. Rullman, the ME, described claimant's condition. He testified that claimant satisfied Listing 4.04, Ischemic Heart Disease, medically, but that the record did not reflect the physical limitations required by the listing. Dr. Rullman expressed concern about the contrast between the record, Dr. Spear's treatment notes in particular, and the letter Dr. Spear wrote describing claimant as unable to work. Dr. Rullman also pointed out that the results of claimant's stress EKG and echocardiogram were normal. Tr. 330-334.

Next, claimant testified before the ALJ. She testified that she suffers from constant chest pain, fatigue, and difficulty breathing. She stated that she is able to do housework, though she

requires frequent breaks, and takes walks with her child a few blocks at a time, but cannot run and play with him at the park. She also claims that her legs ache constantly and she has to take nitroglycerin to control her chest pains four or fives days per week. Tr. 336-345.

Finally, a vocational expert testified that, in light of Dr. Spears summary of her limitations, claimant is incapable of performing past relevant work. Based on the ALJ's hypothetical, the VE concluded that claimant could perform the work of a sedentary cashier. But, when questioned by claimant's counsel, the VE said there was no work available if claimant required two hours of rest in a typical day or if claimant would miss an average of four days of work per month. Tr. 346-349.

## DISCUSSION

Claimant objects to the ALJ's findings on three grounds: (1) the ALJ failed to give clear and convincing reasons for rejecting the opinion of claimant's treating physician; (2) the ALJ rejected claimant's testimony as lacking in credibility, but did not give sufficient reasons for doing so; and (3) the ALJ discounted the testimony of lay witnesses without giving reasons germane to each. Claimant requests that the court reverse the decision of the ALJ and remand her case for an award of benefits.

1.  **Opinion of Claimant's Treating Physician**

Claimant argues that the ALJ improperly dismissed the conclusions of her primary treating physician, Dr. Spear. (Pl.'s Br. at 6.) The opinion of a treating physician is given more weight than the opinion of a non-treating physician. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The uncontradicted opinion of a treating or examining physician can only be rejected for "clear and convincing reasons supported by substantial evidence in the record." Id. (internal

FINDINGS AND RECOMMENDATION 8

citation and quotation marks omitted). Even where the opinion is contradicted, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." Id. (internal quotation marks and citations omitted).

Here, the ALJ discounted Dr. Spear's summary assessment of claimant's abilities because, in his view, it was at odds with the notes taken throughout the course of claimant's treatment. In an April 3, 2006, letter, Dr. Spear attempted to clarify his position on claimant's ability to work. He wrote that although claimant's angina is medically stable, she is not capable of sustaining a regular work regimen. Tr. 321. However, the ALJ reasonably concluded that the record as a whole supported a different conclusion and properly rejected Dr. Spear's conclusions. Overwhelming record evidence indicates that claimant's heart disease is stable, her impairments are managed by medication and, despite minor blood pressure and fatigue issues, claimant is doing fine. The court recognizes that Dr. Spear took pains to clarify his assessment of claimant in his April 3, 2006, letter. However, the ALJ chose to give little weight to Dr. Spear's conclusions based on clear and convincing reasons supported by substantial record evidence. This analysis was supported by the ME, who also found Dr. Spear's conclusions at odds with his prior treatment notes. Therefore, the ALJ properly rejected the assessment of claimant's treating physician.

2. **Claimant Credibility**

Claimant argues that the ALJ improperly rejected her testimony as to her symptoms and limitations. (Pl.'s Br. at 8.) The ALJ is permitted to use "ordinary techniques of credibility evaluation" when weighing the value of claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (quoting Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989). However,

"[f]or the ALJ to reject the claimant's complaints, [the ALJ] must provide specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (internal citation and quotation marks omitted). Further, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. Where "claimant produces medical evidence of an underlying impairment, the [ALJ] may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Bunnell, 947 F.3d at 343). In fact, "[u]nless there is affirmative evidence showing that the claimant is malingering, the [ALJ's] reasons for rejecting the claimant's testimony must be clear and convincing." Lester, 81 F.3d at 834 (internal quotation marks omitted).

Here, the ALJ found that, although the record did support the existence of claimant's impairments, "her statements concerning the intensity, duration and limiting effects of these symptoms [were] not entirely credible." Tr. 20. First, claimant's allegations concerning her leg impairments are demonstrably not supported by medical evidence in the record. The vascular surgeon who examined claimant's legs concluded the opposite: claimant did not show any signs of a vascular condition in her legs and could, in fact, exercise without limit. Tr. 240. The ALJ reasonably concluded that "[claimant's] complaints of problems with her legs were not consistent with objective findings and appeared to be exaggerated." Tr. 20.

Second, with regard to claimant's heart condition, the ALJ found claimant less than credible for the following reasons: (1) Dr. Spear's assessment of claimant over time, wherein claimant is medically stable, her impairments are controlled by medication, and fatigue and shortness of breath are rarely mentioned; (2) a stress test and an echocardiogram, the results of

FINDINGS AND RECOMMENDATION    10

which are in the normal range; (3) claimant's stable condition despite intermittent use of tobacco; and (4) the infrequency with which claimant was seen by Dr. Spear. Tr. 20-21. Again, it was not unreasonable for the ALJ to give greater weight to Dr. Spear's treatment notes, documenting years of treatment, than that given to Dr. Spear's conclusions, for purposes of a disability determination.

The ALJ provided specific and cogent reasons for discounting claimant's testimony. This reasoning is clear and convincing and supported by substantial evidence in the record.

### 3. **Lay Witness Credibility**

Claimant argues that the ALJ erred in rejecting lay witness testimony. (Pl.'s Br. at 12.) The Ninth Circuit has held that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [their] condition." Dodrill v. Shalala, 12 F.3d 915, 918-919 (9th Cir. 1993). If the ALJ finds the lay testimony not credible, it can be discounted, but only where the ALJ "gives reasons that are germane to each witness." Id. at 919. The Ninth Circuit "[has] consistently reversed the Commissioner's decisions for failure to comment on such competent testimony." Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, the ALJ specifically addressed the testimony of the three lay witnesses. The ALJ accepted Mr. Watkins testimony but disagreed with the alleged postural limitations and inability of claimant to complete tasks because they were unsupported by the record. Tr. 22. He objected to Ms. Abrames testimony that claimant has memory and concentration problems as limitations unsupported by the record. The ALJ also rejected lay testimony about claimant's leg pain because it was at odds with the observations of Dr. Swensson. Tr. 23. Finally, the ALJ rejected

FINDINGS AND RECOMMENDATION     11

Ms. Kidd's testimony that claimant is "weak, tired and in pain" all the time because it was unsupported by the record. He also rejected the contention by Ms. Kidd that claimant expends all her energy on caring for her child. The ALJ reasoned that claimant had "people living with her who allegedly help her with the child, so it is unclear how much time and effort she is actually using in caring for the child." Id.

The ALJ gave specific reasons supported by the record for rejecting the testimony of each lay witness. Therefore, the ALJ properly considered lay testimony.

## CONCLUSION

For the reasons stated, the decision of the Commissioner denying claimant's application should be AFFIRMED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than November 12, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 29th day of October, 2007.

       /s/ Donald C. Ashmanskas
      DONALD C. ASHMANSKAS
      United States Magistrate Judge